NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN D. LIPANI, M.D., as an assignee, authorized representative, and attorney-in-fact of his patient S.L.,<br><br>                Plaintiff,<br><br>                v.<br><br>CIGNA HEALTH AND LIFE INSURANCE COMPANY,<br><br>                Defendant. | Civil Action No. 21-16851 (GC) (TJB)<br><br>**MEMORANDUM OPINION** |

**CASTNER, District Judge**

**THIS MATTER** comes before the Court upon two motions for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56: (1) Plaintiff John D. Lipani, M.D.'s, Motion for Summary Judgment (*see* ECF No. 17), and (2) Defendant Cigna Health and Life Insurance Company's Motion for Summary Judgment (*see* ECF No. 15). The Court has carefully considered the parties' submissions, and decides the matter without oral argument pursuant to Rule 78 and Local Civil Rule 78.1. For the reasons set forth herein, and other good cause shown, Plaintiff's motion is **DENIED**, and Defendant's motion is **GRANTED**.

I.  **BACKGROUND**[1]

   A.  **Procedural Background**

This is a dispute over a denied claim for health benefits stemming from an abandoned surgical procedure. On September 13, 2021, Dr. John D. Lipani ("Lipani"), M.D., a board-certified specialist in brain and spine surgery who owns and operates Princeton Neurological Surgery, P.C., filed this action against Cigna Health and Life Insurance Company ("Cigna"), which administers commercial health plans.[2] (ECF No. 1 ¶¶ 1-4.[3]) Lipani brought suit as an assignee, duly-appointed authorized representative, and attorney-in-fact of his patient, S.L.,[4] for unpaid benefits pursuant to Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA").[5] (*Id.* ¶¶ 36-41.[6])

---

[1]    On a motion for summary judgment, the Court "draw[s] all reasonable inferences from the underlying facts in the light most favorable to the nonmoving party." *Jaffal v. Dir. Newark New Jersey Field Off. Immigr. & Customs Enf't*, 23 F.4th 275, 281 (3d Cir. 2022) (quoting *Bryan v. United States*, 913 F.3d 356, 361 n.10 (3d Cir. 2019)).

[2]    The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

[3]    Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

[4]    In the Third Circuit, "a valid assignment of benefits by a plan participant or beneficiary transfers to . . . a [health] provider both the insured's right to payment under a plan and his [or her] right to sue for that payment." *Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 450 (3d Cir. 2018) (citing *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015)). While this transfer of rights can generally be constrained by an anti-assignment clause in ERISA-governed health insurance plans, *id.* at 453, there appears to be no challenge by Cigna to the assignment in this case.

[5]    ERISA is the landmark statute governing employee benefit plans, and Section 502 enables participants and beneficiaries to bring civil actions for benefits under the ERISA statute. *See* 29 U.S.C. § 1132(a)(1)(B).

[6]    The paragraphs in the Complaint are misnumbered, and it jumps from paragraph 41 to 36 instead of to 42. (*See* ECF No. 1 at 9.)

Following discovery, Cigna moved on May 23, 2022, for summary judgment, asking the Court to dismiss the Complaint in its entirety with prejudice. (ECF No. 15.) That same day, Lipani also moved for summary judgment, asking the Court to order that the denied claim be reprocessed by Cigna consistent with the terms of S.L.'s employee benefit plan. (ECF No. 17.) The parties proceeded to file their respective oppositions and replies, and briefing was completed in August 2022.[7] (ECF Nos. 24, 26, 29, 30.)

**B.     Undisputed Facts[8]**

S.L. was the beneficiary of an employee welfare benefit plan known as The Prudential Benefits Choice Fund Open Access Plus HRA 1000 (the "Plan"). (DSMF & PRSMF ¶ 15.) Cigna was the Plan's "claims administrator" and "claims fiduciary." (DSMF & PRSMF ¶ 16; PSMF & DRSMF ¶ 3; ECF No. 15-10 at 11.) Health benefits under the Plan would be paid only if Cigna, as the fiduciary, "decide[d] in its sole discretion that the claimant is entitled to them." (DSMF & PRSMF ¶¶ 17-18; ECF No. 15-10 at 9.)

S.L. suffered from severe lower back pain, and after she visited Lipani for consultations, Lipani recommended a lumbar spine fusion to help relieve the pain. (PSMF & DRSMF ¶ 2; DSMF & PRSMF ¶ 2.) Such a surgery is intensive and complex, and prior to operating on S.L., Lipani received pre-authorization for the procedure from Cigna, which approved several related CPT

---

[7]     As part of motion practice on summary judgment, the Court allowed certain documents to be filed under seal to protect confidential health information. (*See* ECF No. 21.) In rendering its decision on the motions, the Court has not referenced any such confidential health information and detailed only what was necessary to a resolution.

[8]     Defendant's Statement of Material Facts ("DSMF") is at ECF No. 16-1; Plaintiff's Response to Defendant's Statement of Material Facts ("PRSMF") is at ECF No. 26-1; Plaintiff's Statement of Material Facts ("PSMF") is at ECF No. 17-2; and Defendant's Response to Plaintiff's Statement of Material Facts ("DRSMF") is at ECF No. 25.

Codes.[9]  (DSMF & PRSMF ¶¶ 1-5; PSMF & DRSMF ¶¶ 2, 4; ECF No. 16-2 at 2-3.)

On December 27, 2019, the planned day of the surgery, S.L. was brought to the operating room at 8:30 a.m. and placed under a general anesthesia. (DSMF & PRSMF ¶¶ 6-8.) Before S.L. was positioned on the operating table, she "exhibited significant hypotension" and the anesthesiologist struggled to maintain S.L.'s blood pressure. (DSMF & PRSMF ¶¶ 9-10; PSMF & DRSMF ¶ 7.)  Because Lipani and the anesthesiologist were concerned that, under the circumstances, spinal surgery would be risky and potentially life threatening, the surgical procedure was canceled. (DSMF & PRSMF ¶¶ 11-12; PSMF & DRSMF ¶ 7.)  S.L. left the operating room at 9:37 a.m., about an hour after she had entered, and was woken up from the anesthesia, extubated, and taken to the post-operative care unit where she was seen for further evaluation. (DSMF & PRSMF ¶ 13; ECF No. 16-3 at 3.)  Four days later, Lipani performed the lumbar spine fusion surgery on S.L.[10]  (ECF No. 16-6 at 10 ("[C]anceled procedure on 12/27/19 . . . was moved to 12/31/2019.").)

On December 31, 2019, Lipani submitted a claim to Cigna with charges totaling $558,996.00 for the services he allegedly rendered on December 27.[11] (DSMF & PRSMF ¶ 19;

---

[9]  "CPT" refers to the Current Procedures Terminology, which is a system for coding medical services and procedures.

[10]  In Cigna's Statement of Material Facts, it wrote that "[t]he surgery was successfully performed on December 31, 2019 and Plaintiff was paid in accordance with the Plan." (DSMF ¶ 14.) Plaintiff denied the statement "as the documents cited do not support the statement," writing that "Plaintiff . . . lacks sufficient knowledge to determine the payment in relation to the terms of the Plan." (PRSMF ¶ 14.) Because the payment for December 31 is not in dispute in this case, what was paid and whether the surgery was successful is immaterial.

[11]  S.L. assigned her right to submit claims for her surgery to Lipani, and she designated Lipani as her authorized representative to pursue any cause of action that she may have under her insurance policy and the Plan. (PSMF & DRSMF ¶ 8.) S.L. also named Lipani as her "attorney-in-fact." (PSMF & DRSMF ¶ 8.)

4

PSMF & DRSMF ¶ 9; ECF No. 16-8 at 2-3.) In the claim, Lipani billed for several CPT Codes: $85,000.00 for 22633 (arthrodesis, combined posterior single interspace and segment; lumbar); $130,000.00 for 22634 (arthrodesis, combined posterior each additional interspace and segment x4); $138,000.00 for 22853 (insertion of interbody biomechanical device x3); $59,100.00 for 63047 (laminectomy, facetectomy and foraminotomy single vertebral segment; lumbar); $34,500.00 for 63048 (laminectomy, facetectomy and foraminotomy single vertebral segment; each additional segment); $68,562.00 for 22830 (exploration of spinal fusion); $36,879.00 for 22842 (posterior segmental instrumentation 3 to 6 vertebral segments); $3,110.00 for 20930 (morselized allograft); and $3,845.00 for 20936 (autograft for spine surgery only). (ECF No. 16-8 at 2-3; ECF No. 16-2 at 2-3; DSMF & PRSMF ¶ 3.)

On February 26, 2020, Cigna denied the claim on the ground that the December 27 attempt at "surgery was aborted prior to skin incision being made" and the "[o]perative report d[id] not support procedures performed as billed." (DSMF & PRSMF ¶ 20; PSMF & DRSMF ¶ 11; ECF No. 16-9 at 2-6.)

On March 5, 2020, Lipani submitted a "corrected" claim with charges that totaled $322,072.00 for the surgical services allegedly rendered on December 27.[12] (DSMF & PRSMF ¶ 21; PSMF & DRSMF ¶ 10; ECF No. 16-10 at 2-4.) On March 27, Cigna denied the corrected claim, again on the ground that the December 27 attempt at surgery had been terminated prior to an incision and the report from the procedure did not support payment of the services as billed. (DSMF & PRSMF ¶ 22; PSMF & DRSMF ¶ 11; ECF No. 16-11 at 2-6.)

---

[12]  Lipani's March 5, 2020 claim included most of the same CPT Codes as were listed in the claim submitted on December 31, 2019. (*Compare* ECF No. 16-8, *with* ECF No. 16-10.)

On April 21, 2020, Lipani appealed Cigna's denials. (DSMF & PRSMF ¶ 23; ECF No. 16-6 at 4-5.) Lipani highlighted that (i) he had received authorization from Cigna prior to attempting the surgery; (ii) had appropriately submitted a "Modifier 53" with the claims for those services that had to be prematurely canceled; and (iii) the facility and anesthesia claims for December 27 had been paid by Cigna. (PSMF & DRSMF ¶ 12; ECF No. 16-6 at 2-51.)

One month later, on May 20, 2020, Cigna denied the appeal and upheld its determination that Lipani's December 27 charges were not eligible for reimbursement. (DSMF & PRSMF ¶ 24; PSMF & DRSMF ¶ 14.) In the denial, Cigna wrote that its "research show[ed] that [the] claim was processed correctly and according to the terms of the member's benefit plan provisions as well as Cigna's reimbursement policies." (ECF No. 16-12 at 3.) Specifically, Cigna explained that the billed services denied were "not supported by the documentation provided with the claim submission" and that "services or procedures that are not clearly detailed will not be considered for reimbursement." (*Id.*)

Following the denial of the appeal, Lipani asked for an external review by an independent organization. (DSMF & PRSMF ¶ 25-27; ECF No. 16-13 at 2-4.) The request for an external review was denied on July 30, 2020, because Cigna's claim denial did not involve medical judgment and, therefore, was ineligible under the Plan for external review. (DSMF & PRSMF ¶¶ 26-30; PSMF & DRSMF ¶ 20; ECF No. 16-15 at 2.)

After the request for external review was denied, Lipani sent S.L. a bill for $87,757.00. (DSMF & PRSMF ¶ 30.)

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 56: Summary Judgment

Pursuant to Rule 56, "[s]ummary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party and drawing all inferences in favor of that party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016) (citing Fed. R. Civ. P. 56(a)). "A fact is material if—taken as true—it would affect the outcome of the case under governing law." *M.S. by & through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 125 (3d Cir. 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "And a factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.*

The standard is the same in the context of dueling motions for summary judgment. *See Auto-Owners Ins.*, 835 F.3d at 402. "When both parties move for summary judgment, '[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.'" *Id.* (quoting 10A Charles Alan Wright et al., *Federal Practice & Procedure* § 2720 (3d ed. 2016)).

## III. DISCUSSION

### A. Statute of Limitations

Relying on the provision in S.L.'s Plan that states that "[a]ny suit or legal action [had to be] initiated by . . . one year following a final decision on your claim," Cigna initially argued that Lipani's Complaint should be dismissed because it was untimely filed. (ECF No. 16 at 14-16; *see also* DSMF & PRSMF ¶ 31.) In opposition, Lipani pointed out that, among other things, Cigna's denial letter stated that Plaintiff could initiate suit pursuant to Section 502(a) of ERISA within

three years, which Lipani did on Plaintiff's behalf.¹³ (ECF No. 26 at 10-11; *see also* ECF No. 17-3 at 93.) On reply, Cigna withdrew its argument that Lipani's cause of action was untimely, acknowledging that the denial letter referenced a three-year limitations period. (ECF No. 29 at 5.) Accordingly, there is no dispute, and Lipani's Complaint is deemed timely filed.

### B. Standard of Review

The parties contest what standard of judicial review applies. Cigna argues that the claim denial should be reviewed under the arbitrary-and-capricious standard because S.L.'s Plan gave Cigna discretionary authority. (ECF No. 16 at 16-17 (citing *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012)).) Citing *Halo v. Yale Health Plan, Dir. of Benefits & Recs. Yale Univ.*, 819 F.3d 42, 57-58 (2d Cir. 2016), Lipani argues that the denial should be reviewed *de novo* because Cigna did not fully comply with ERISA's claims-procedure regulations. (ECF No. 17-1 at 9-10.) Lipani's chief complaint with the procedure that Cigna followed is that "Cigna did not provide a sufficient denial reason as required by the claims[-]procedure regulations." (*Id.* at 11-12 (citing 29 C.F.R. §§ 2560.503-1(g)(1)(i)-(v)).)

While the Court appreciates Lipani's arguments, the Court finds that the arbitrary-and-capricious standard is the appropriate level of judicial review under the particular facts of this case. The Plan grants Cigna discretionary authority: it identifies Cigna as the claims administrator and claims fiduciary and states that "[b]enefits under each ERISA-governed plan will be paid only if the applicable claims fiduciary decides in its sole discretion that the claimant is entitled to them."

---

¹³ Lipani also cited case law from the United States Court of Appeals for the Third Circuit for the proposition that the appropriate limitations period should be six years. (ECF No. 26 at 11.) Because Cigna has conceded that the Complaint is timely, the Court does not reach Lipani's other arguments.

8

(ECF No. 15-10 at 9, 11, 12; DSMF & PRSMF ¶ 18.) Lipani does not appear to challenge the assertion that the Plan grants Cigna discretionary authority. (ECF No. 17-1 at 11-13.)

When an employee welfare benefit plan, as here, "grants its administrator . . . discretionary authority, '[t]rust principles make a deferential standard of review appropriate,'" and a denial is reviewed "under an 'arbitrary and capricious' standard." *Fleisher*, 679 F.3d at 120-21 (first quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989); then quoting *Orvosh v. Program of Grp. Ins. for Salaried Emps. of Volkswagen of Am., Inc.*, 222 F.3d 123, 129 (3d Cir. 2000)).[14] "The scope of this review is narrow, and 'the court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits.'" *Doroshow v. Hartford Life & Acc. Ins. Co.*, 574 F.3d 230, 234 (3d Cir. 2009) (quoting *Abnathya v. Hoffmann-La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993)); *see also Cato v. Unum Life Ins. Co. of Am.*, Civ. No. 21-10056, 2022 WL 3013085, at *8 (D.N.J. July 29, 2022) ("Accordingly, deference should be given to the lion's share of ERISA claims." (citation omitted)). "[P]laintiff carries the burden of demonstrating that . . . the administrator's decision was arbitrary and capricious." *Menes v. Chubb & Son*, 101 F. Supp. 3d 427, 434 (D.N.J. 2015) (citation omitted).

Nevertheless, as Lipani observes, the United States Court of Appeals for the Second Circuit held in *Halo* that even when a plan grants the administrator discretion, it may be appropriate to apply a *de novo* standard of judicial review if the denial of a claim fails to comply with the

---

[14]    Although the arbitrary-and-capricious standard is sometimes referred to as an "abuse of discretion" standard, the United States Court of Appeals for the Third Circuit has underscored "that '[i]n the ERISA context, the arbitrary and capricious and abuse of discretion standards of review are essentially identical.'" *Fleisher*, 679 F.3d at 121 n. 2 (quoting *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 n.2 (3d Cir. 2011)); *accord Noga v. Fulton Fin. Corp. Emp. Benefit Plan*, 19 F.4th 264, 276 (3d Cir. 2021) (noting that the arbitrary-and-capricious and abuse-of-discretion standards of review are essentially identical in the ERISA context).

minimum regulatory requirements set forth by the Department of Labor, unless the administrator can show it had established procedures in full conformity with the regulations and the failure to comply was inadvertent and harmless.[15] 819 F.3d at 45, 55-58. Lipani does not identify any court in this Circuit following *Halo*'s approach, and this Court has independently found no record of the Third Circuit adopting the approach, and the one district court to consider it chose not to do so. *See L.M. v. Metro. Life Ins. Co.*, Civ. No. 16-8287, 2016 WL 8193159, at *4 (D.N.J. Dec. 2, 2016) (Shipp, J.) ("[T]he Court declines to adopt the analysis in *Halo* – even with the alleged, procedural irregularities argued by Plaintiffs – the Court finds that the brief delay amounts to an inadvertent and harmless deviation and does not trigger a *de novo* review.").

More importantly, the Third Circuit Court of Appeals has held that notice deficiencies and poor reasoning for the denial of a claim is a factor that can be appropriately considered under the arbitrary-and-capricious standard of review and does not necessitate altering the standard to *de novo* absent a "severe procedural violation." *See, e.g., Noga v. Fulton Fin. Corp. Emp. Benefit Plan*, 19 F.4th 264, 276 (3d Cir. 2021) (underscoring that "a fiduciary . . . need not maintain a procedurally immaculate claim file to avoid an abuse-of-discretion finding," and indicating that courts in the Third Circuit utilize a "combination-of-factors analysis"); *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 850-51 (3d Cir. 2011) (noting that ERISA Section 503 and accompanying regulations set forth minimum requirements for what a plan administrator must provide when rendering a determination, and that "an administrator's compliance . . . in making an adverse benefit determination is probative of whether the decision to deny benefits was arbitrary and capricious"); *Becknell v. Severance Pay Plan of Johnson & Johnson & U.S. Affiliated*

---

[15] The plaintiff in *Halo* alleged irregularities in "both the timing and content of the . . . denials," and the Second Circuit remanded for the district court to determine what standard should apply in that case. 819 F.3d at 46, 61.

*Companies*, 644 F. App'x 205, 213 (3d Cir. 2016) (reviewing the approach of various Courts of Appeals and suggesting that "deference" should be accorded absent "a severe procedural violation"); *see also Connor v. Sedgwick Claims Mgmt. Servs., Inc.*, 796 F. Supp. 2d 568, 583 (D.N.J. 2011) (concluding that defendant's "fail[ure] to satisfy the notice requirements of ERISA and . . . 29 C.F.R. § 2560.503-1(g)(iii) . . . weighs in favor of finding that its decision to terminate . . . benefits was arbitrary and capricious").

### C. Denial of Claim for Benefits

"ERISA is a 'comprehensive legislative scheme' designed to 'protect . . . the interests of participants in employee benefit plans and their beneficiaries,' and to do so provides for a variety of standards and regulations for . . . 'welfare plans.'" *Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 449 (3d Cir. 2018) (first quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004); then quoting 29 U.S.C. § 1002(1)). These welfare plans "include[] health insurance plans, and ERISA provides employees covered by such plans with the right to sue" when necessary to obtain promised benefits. *Id.* (citations omitted).

Relevant here, "Section 502(a)(1)(B) of ERISA creates a civil cause of action for a plan participant 'to recover benefits due to him[/her] under the terms of his[/her] plan, to enforce his[/her] rights under the terms of the plan, or to clarify his[/her] rights to future benefits under the terms of the plan.'" *Fleisher*, 679 F.3d at 120 (quoting 29 U.S.C. § 1132(a)(1)(B)). "To assert [such] a claim . . . , a plan participant must demonstrate that 'he or she . . . ha[s] a right to benefits that is legally enforceable against the plan,' and that the plan administrator improperly denied those benefits." *Id.* (quoting *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 574 (3d Cir. 2006)).

A district court must examine a variety of factors when analyzing whether a decision to deny benefits was arbitrary and capricious, including procedural concerns about the decision-

making process and structural concerns about conflicts of interest, and the factors vary and are "case-specific."[16] *Est. of Schwing v. The Lilly Health Plan*, 562 F.3d 522, 526 (3d Cir. 2009) ("[T]he factors to be considered will be varied and case-specific." (citing *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 117 (2008))).

Ultimately, "[a]n administrator's decision is arbitrary and capricious 'if it is without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Fleisher*, 679 F.3d at 121 (quoting *Miller*, 632 F.3d at 844). Substantial evidence is "defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Soubik v. Dir., Off. of Workers' Comp. Programs*, 366 F.3d 226, 233 (3d Cir. 2004)); *accord Richardson v. Perales*, 402 U.S. 389, 401 (1971) ("[S]upported by substantial evidence . . . means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938))). And "[w]hen reviewing an administrator's factual determinations, [courts] consider only the 'evidence that was before the administrator when he made the decision being reviewed.'" *Fleisher*, 679 F.3d at 121 (quoting *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 440 (3d Cir. 1997)); *see also Noga*, 19 F.4th at 275 ("But an ERISA administrative record may not be supplemented with *post hoc* explanations for procedural irregularities.").

Lipani contends that Cigna's denial of the claim was contrary to "Modifier 53," which S.L.'s Plan incorporated. (*See* PSMF & DRSMF ¶¶ 16-18.) He notes that Cigna's reimbursement policy included a "Modifier Reference Guide" that stated that for "[d]iscontinued [p]rocedures –

---

[16] Lipani does not allege a structural conflict or argue that this is a factor that should be given any weight. However, even if there had been a structural conflict, it is not dispositive. *See Fleisher*, 679 F.3d at 122 n.3 ("[T]he conflict of interest inherent in the fact that [the plan administrator] both pays and decides what should be paid is a factor to be considered in applying the abuse of discretion standard of review. It is not, however, inherently a determinative factor.").

reported when a procedure is terminated by the physician or other qualified health care professional" – "Cigna provides reimbursement for the billed procedure at 50% of the fee schedule or other allowed amount when [M]odifier 53 is appended correctly." (ECF No. 17-3 at 104, 106.) Because the claim for Lipani's alleged services on December 27, 2019 had "Modifier 53 appended to each and every CPT code," Lipani insists that he is entitled to reimbursement at the appropriate level. (ECF No. 17-1 at 17-18.)

Further, Lipani accuses Cigna of imposing an "unsupported" incision requirement because Cigna cited to the fact that Lipani did not make an incision on December 27 when it repeatedly denied Lipani's claim. (*Id.* at 18-19.) Lipani observes that the "American Medical Association's CPT manual" states that Modifier 53 "should not be used prior to the induction of anesthesia," and he encourages the Court to interpret this as endorsing his position that, once anesthesia is administered, the procedure has begun, and the surgeon is entitled to charge even if he or she does not perform any of the anticipated steps in the surgical procedure, including not making an incision. (ECF No. 26 at 20.)

In opposition, Cigna contends that its denial was consistent with the plain terms of the Plan, which states that "[c]harges not covered include: . . . [c]harges submitted for services that are not rendered." (ECF No. 16 at 18-19; ECF No. 15-10 at 4, 8.) As to Modifier 53, Cigna submits that it does not apply in this case because the "record demonstrates that the services for which Plaintiff billed . . . were never started." (ECF No. 16 at 19.) Cigna underscores that S.L. "was not even positioned on the table" for surgery, let alone that any "of the nine procedures for which CPT codes were approved [and billed] were started." (*Id.*)

Having canvassed the record and considered the parties' respective positions, the Court finds no basis for disturbing Cigna's denial of Lipani's claim for the abandoned December 27, 2019 surgery.

As Lipani's own report from that morning makes clear, after S.L. "was placed under general anesthesia" and "[p]rior to positioning [her] prone on an open Jackson table, . . . [S.L.] exhibited significant hypotension, and . . . [a]fter some discussion between [Lipani] and the anesthesia physicians, [they] decided to abort the surgery." (ECF No. 16-3 at 3.) As a result, S.L. "was woken up from anesthesia . . . and taken to the Postoperative Care Unit." (*Id.*) Lipani made no record of starting any surgical procedure or performing any specific action during the one hour that S.L. was in the operating room other than having a discussion with S.L.'s anesthesiologist about the risks posed by her hypotension and unstable blood pressure, which led to the planned surgery being called off.

Thus, when Cigna received Lipani's claim in the amount of $558,996.00 for services allegedly rendered on December 27 – billing under different CPT Codes for various surgical procedures – its denial stated that "the billed charges . . . d[id] not meet the criteria for . . . payment." (ECF No. 16-9 at 2.) Specifically, next to each billed CPT Code, Cigna wrote that Lipani's "[o]perative report d[id] not support procedures performed as billed. Documentation clearly states surgery was aborted prior to skin incision being made." (*Id.* at 5.)

When Lipani resubmitted a "corrected" claim in the amount of $322,072.00 for those same alleged services, Cigna denied it a second time for the reasons it had outlined previously. (ECF No. 16-11 at 2-6.) And on appeal, Cigna confirmed that its denial was because the billed services were "not supported by the documentation provided with the claim submission" and that "services or procedures not clearly detailed will not be considered for reimbursement." (ECF No. 16-12 at

14

3.) In contrast to the denial of Lipani's claim for December 27, it is undisputed that Cigna paid the anesthesiologist and covered the facility fee for that day. (PSMF & DRSMF ¶ 12 ("[Statement:] . . . [T]he facility and anesthesia claims for the same procedure and date of service were paid. [Response:] Admitted."); *see also* ECF No. 16-6 at 14.)

On this record, the Court cannot find fault in Cigna's interpretation of the Plan or the denial of Lipani's claim. The Plan states that charges "for services that are not rendered" are "not covered," and Lipani does not contend that he actually performed the services for which he billed. (ECF No. 15-10 at 4, 8.) Instead, Lipani invokes Modifier 53 for "[d]iscontinued [p]rocedures," and asks this Court to effectively hold that once a patient is given general anesthesia, the surgeon should be permitted to charge and be reimbursed for the various surgical procedures that were planned, even if the surgeon does none of them. The Court cannot do so.

Cigna's reading of the Plan to require that services be rendered prior to a treating physician charging for them is reasonably consistent with the Plan's unambiguous language. *See Dowling v. Pension Plan For Salaried Emps. of Union Pac. Corp. & Affiliates*, 871 F.3d 239, 245 (3d Cir. 2017) ("[W]e will not set aside the administrator's interpretations of 'unambiguous plan language' as long as those interpretations are 'reasonably consistent' with the plan's text." (quoting *Fleisher*, 679 F.3d at 121)). To the degree that Modifier 53 is ambiguous as to when a surgical procedure commences and then is "[d]iscontinued," Cigna's determination that Lipani had not discontinued the surgical procedure because it never commenced – the patient was wheeled in and out of the operating room without the surgeon either positioning the patient prone on the operating table or making an incision[17] – was certainly a reasonable exercise of the discretion afforded to it as the

---

[17] In many ways, Lipani's emphasis on the fact that the procedure was canceled after anesthesia was administered is misleading. His own report notes that as part of administering the general anesthesia, it became evident that it would be risky to proceed further; thus, the planned

Plan administrator and claims fiduciary. *See id.* ("[W]e will only disturb the administrator's interpretations of ambiguous plan language when those interpretations are 'arbitrary and capricious.'"); *see also Patrick v. Reliance Standard Life Ins. Co.*, 694 F. App'x 94, 97 (3d Cir. 2017) ("[W]e conclude that [the administrator's] interpretation of the Plan was reasonable and, therefore, should not be disturbed.").

Moreover, Cigna's reasoning for its denial – that the "[o]perative report d[id] not support procedures performed as billed" (*see* ECF No. 16-9 at 5; ECF No. 16-11 at 5; ECF No. 16-12 at 3) – is consistent with the arguments it now advances. Although Cigna could have provided greater detail during the administrative process, the Court does not find under the facts of this case that the explanation provided was so vague or conclusory as to leave Lipani with no choice but to speculate, which would have denied him the opportunity to a full and fair review. *See C.E. v. Excellus Blue Cross Blue Shield*, Civ. No. 14-6950, 2017 WL 593492, at *10 (D.N.J. Feb. 14, 2017) (Wolfson, C.J.) ("In the context of reimbursement claims, a plan administrator satisfies the minimum procedural requirements when it specifically explains, for example, that the claim was not properly documented, or 'the charges exceeded the reasonable and customary fees, or were improperly bundled.'" (quoting *Diagnostic Med. Assocs., M.D., P.C. v. Guardian Life Ins. Co. of Am.*, 157 F. Supp. 2d 292, 300 (S.D.N.Y. 2001))). Cigna repeatedly stated that the operative report from Lipani did not support payment for the services billed, underscoring that Lipani had not even made an incision on December 27. The basis of the denial was thus clear and reasonable under the Plan. Accordingly, the Court finds that Cigna did not abuse its discretion in denying Lipani's claim for the services he charged for but did not render on December 27, 2019.

---

procedure could be viewed as having ended at the anesthesia stage, not after. (*See* ECF No. 16-3 at 3 ("[T]he anesthesiologist was having difficulty maintaining her blood pressure . . . . Consequently, . . . [a]fter some discussion . . . , we decided to abort the surgery . . . .").)

Even if the Court were to review the denial *de novo*, it would find Cigna's determination correct under the terms of the Plan. When the Plan is read as a whole, it is apparent that a surgical procedure must have commenced in some concrete way prior to discontinuation for a physician to be eligible for reimbursement. To interpret it otherwise – that is, to allow a surgeon to charge for various *planned* surgical procedures, even when the physician has taken no surgical action in furtherance of those procedures – would create an intolerable contradiction in the express terms of the Plan by rendering mere surplusage the provision that states that the Plan will not cover services that are not performed. *See Chavis v. Plumbers & Steamfitters Loc. 486 Pension Plan*, 612 F. Supp. 3d 516, 543 (D. Md. 2020) ("[I]n interpreting a plan, '[c]ontract terms must be construed to give meaning and effect to every part of the contract, rather than leave a portion of the contract meaningless or reduced to mere surplusage.'" (quoting *Goodman v. Resol. Tr. Corp.*, 7 F.3d 1123, 1127 (4th Cir. 1993))). Because the express terms of the Plan should be read in a coherent manner, the Court believes that Cigna's interpretation was the correct one.[18] *See Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 413-14 (3d Cir. 2011) ("[I]f we exercise *de novo* review, the role of the court 'is to determine whether the administrator . . . made a correct decision.' . . . The court must review the record and 'determine whether the administrator properly interpreted the plan and whether the insured was entitled to benefits under the plan.'" (quoting *Hoover v. Provident Life & Acc. Ins. Co.*, 290 F.3d 801, 809 (6th Cir. 2002))).

Therefore, summary judgment will be granted in favor of Cigna and the case closed.

---

[18] Lipani suggests that if the Court does not overturn the denial of his claim it will somehow "encourage bad medicine – specifically, that the doctor knows he can't proceed, but will cut anyway." (ECF No. 17-1 at 18.) This is not a persuasive argument as a physician owes his or her patient a duty of care and acting against the interests of a patient simply to bill greater amounts could expose a physician to liability and professional consequences.

## IV. CONCLUSION

For the foregoing reasons, and other good cause shown, Plaintiff's Motion for Summary Judgment (*see* ECF No. 17) is **DENIED**, and Defendant's Motion for Summary Judgment (*see* ECF No. 15) is **GRANTED**. An appropriate Order follows.

Dated: June 28, 2023

*Georgette Castner*
GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE